AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>A Residence, A Person, A Backpack and A Vehicle<br>More Fully Described in Attachments A-1 to A-4 | )<br>)<br>)   Case No.   MJ21-311<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

A Residence, Person, Backpack and a Vehicle, more fully described in Attachments A-1 to A-4, incorporated herein by reference.

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) and 846 | Distribution, Possession and Conspiracy with Intent to Distribute Controlled Substance |
| 21 U.S.C. § 843(b) | Unlawful Use of U.S. Mails to Facilitate Distribution of Controlled Substances |

The application is based on these facts:

✓ See Affidavit of USPS Special Agent Casey Snyder, attached hereto and incorporatated herein by reference.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

CASEY J. SNYDER, Special Agent, USPS OIG
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:   05/26/2021

_____
*Judge's signature*

City and state:  Seattle, Washington

BRIAN A. TSUCHIDA, United States Magistrate Judge
*Printed name and title*

USAO: 2021R00039

**AFFIDAVIT OF CASEY J. SNYDER**

STATE OF WASHINGTON          )
                             )     ss
COUNTY OF KING               )

I, Casey J. Snyder, being first duly sworn on oath, hereby depose and say:

**INTRODUCTION**

1.      **Affiant Background.**  I am a Special Agent with the United States Postal Service Office of Inspector General ("USPS-OIG"), assigned to the Seattle Field Office. I have been a Special Agent with the USPS-OIG since February of 2012.  I am authorized to enforce the laws of the United States and to investigate crimes committed against the U.S. Postal Service or by U.S. Postal Service employees.  Prior to joining the USPS-OIG, I was a Special Agent with the Air Force Office of Special Investigations (AFOSI) for approximately four years.  I received my initial training at the Federal Law Enforcement Training Center (FLETC), in Glynco, Georgia.  I was trained in various investigative methods such as interviewing and interrogation, surveillance, search and seizure, the identification of various types of controlled substances by sight and odor, the way in which controlled substances are packaged, marketed, and consumed, and the effects of various controlled substances on human physiology.  I have conducted numerous narcotics investigations involving the manufacturing, possession, and distribution of controlled substances.

2.      **Duties, Training & Experience.**  As part of my duties, I investigate the use of the U.S. mails to illegally mail and receive controlled substances, the proceeds of drug trafficking, as well as other instrumentalities associated with drug trafficking, in violation of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with intent to distribute controlled substances), 843(b) (unlawful use of a communication facility, including the U.S. mails, to facilitate the distribution of controlled substances and proceeds from the sale thereof), and 846 (controlled substances conspiracy).  As set forth

1 below, my training and experience includes identifying parcels with characteristics

2 indicative of criminal activity.  During my employment with the USPS-OIG, I have

3 participated in many criminal investigations involving suspicious parcels and controlled

4 substances.

5 <u>**INTRODUCTION AND PURPOSE OF AFFIDAVIT**</u>

6 3.      This affidavit is submitted in support of an application for search warrants

7 for the following location, person, property, and vehicle:

8 (a)      **15103 Southeast Newport Way, Bellevue, Washington 98006**

9 (Herein referred to as the "**SUBJECT PREMISES**"), further described in Attachment A-

10 1, which is incorporated herein by reference; and

11 (b)      The person of **TRI HIEN DUONG**, further described in Attachment

12 A-2, which is incorporated herein by reference; and

13 (c)      The **black backpack** of TRI HIEN DUONG (Herein referred to as

14 the "**BACKPACK**"), further described in Attachment A-3, which is incorporated herein

15 by reference; and

16 (d)      **A red, 2021, Acura RDX, bearing Washington license plate**

17 **BWP2727; and VIN: 5J8TC2H57ML014595** (Herein referred to as the "**SUBJECT**

18 **VEHICLE**"), further described in Attachment A-4, which is incorporated herein by

19 reference.

20 4.      For the **SUBJECT PREMISES**, authority to search extends to all parts of

21 the property, including main structure, garage(s), storage structures, outbuildings, and

22 curtilage, and all vehicles, containers, compartments, or safes located on the property,

23 whether locked or not, where the items described in Attachment B (items to be seized)

24 could be found.

25 5.      As set forth below, there is probable cause to believe that the **SUBJECT**

26 **PREMISES**, the person of TRI DUONG, and the **SUBJECT VEHICLE**, will contain or

27 possess evidence, fruits, and instrumentalities of possession of controlled substances with

28 intent to distribute, and distribution of controlled substances, in violation of Title 21,

Affidavit of Special Agent Casey J. Snyder – 2
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  United States Code, Section 841(a).  I seek authorization to search and seize the items

2  specified in Attachment B, which is incorporated herein by reference.

3          6.      The information contained in this affidavit is based upon knowledge I

4  gained from my investigation, my personal observations, my training and experience, and

5  investigation by other law enforcement officers.  Because this affidavit is being submitted

6  for the limited purpose of securing a search warrant, I have not included every fact of

7  which I am aware pertaining to the investigation.  I have set forth only those facts that I

8  believe are relevant to determination of probable cause to support the issuance of the

9  requested warrants.  When the statements of others are set forth in this affidavit, they are

10 set forth in substance and in part.

11                        **THE INVESTIGATION**

12         7.      In November of 2020, Investigators with the United States Postal

13 Inspection Service (USPIS) identified multiple parcels being mailed from various

14 locations to Bellevue, Washington.  The parcel were Express Mail parcels, paid in cash,

15 and primarily destined to the same Postal Service delivery route.  The delivery route was

16 identified as route 83, in Bellevue, Washington.  Postal Service records indicated this

17 route was normally delivered by TRI HIEN DUONG.  Evidence indicates that DUONG,

18 a Postal Service employee, is using his position with the USPS to traffic controlled

19 substances and/or the proceeds from the sale of controlled substances.  The investigation

20 has shown DUONG is receiving parcels on his delivery route, which contain United

21 States currency.  He takes these parcels to his home address or other locations instead of

22 delivering them.

23         8.      The parcels appeared to be destined to true and deliverable addresses, but to

24 names which were not associated with those addresses.  Furthermore, the parcels are

25 regularly mailed from the same city and state, such as Oak Grove, Kentucky; Clarksville,

26 Tennessee; and Atlanta, Georgia.  With few exceptions, the Express Mail parcels only

27 arrive on days when DUONG is on duty and delivers mail on route 83.

28

Affidavit of Special Agent Casey J. Snyder – 3
USAO #2021R00039

9.      Postal Service records show DUONG's address as 16004 Lake Hills Boulevard, Bellevue, Washington, 98008.  Physical surveillance and law enforcement records show DUONG resides at 15103 Southeast Newport Way, Bellevue, Washington, 98006 (the **SUBJECT PREMISES**).  On January 13, 2021, investigators obtained a federal warrant to track the **SUBJECT VEHICLE**.  Data from the tracker affixed to the **SUBJECT VEHICLE**, combined with physical surveillance, has confirmed DUONG's residence to be the **SUBJECT PREMISES**).

10.      According to law enforcement records, DUONG is 33 years old, with a prior Washington State conviction for Possession of Controlled Substances with no Prescription (2019).  DUONG also had an arrest in 2017 which appeared not to have led to a conviction, for Possession of a Controlled Substance with no Prescription.

11.      On December 11, 2020, investigators executed a federal search warrant on Express Mail parcel EJ253292487US, which was mailed from Cadiz, Kentucky to Duong T, 16004 Lake Hills Boulevard, Bellevue, Washington 98008.  In obtaining probable cause to search the parcel, investigators utilized a narcotics detection canine, who alerted to the presence of controlled substances, in or on the parcel.  This parcel contained $52,000 in United States currency.

12.      On December 22, 2020, investigators conducted surveillance at the **SUBJECT PREMISES**.  Multiple vehicles were observed parked at the residence, including those listed below.  The vehicle information was obtained from Washington State Department of Licensing records.

-   Dark Grey/Silver, 2008, Honda Accord, bearing Washington license plate 944YEH.  Registered to DUONG, 16004 Lake Hills Blvd, Bellevue, WA 98008.
-   White, 2013, Honda Accord, bearing Washington license plate AXP6315. Registered to My Anh Hai NGUYEN and Truong GIAP, at the **SUBJECT PREMISES**.

Affidavit of Special Agent Casey J. Snyder – 4
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        -   White, 2018, Lexus IS, bearing Washington license plate BKG6327.
2            Registered to My NGUYEN, at the **SUBJECT PREMISES**.
3        -   Blue, 2012, Toyota Prius, bearing Washington license plate BKS7412.
4            Registered to Dai TRAN, at the **SUBJECT PREMISES**.

5        13.     On December 24, 2020, at approximately 6:00am, investigators surveilled
6    the SUBJECT RESIDENCE.  Investigators observed the **SUBJECT VEHICLE** parked
7    at the SUBJECT RESIDENCE.

8        14.     On December 31, 2020, investigators conducted surveillance on DUONG.
9    Postal Service records indicated two Express Mail parcels, similar to the parcels
10   described above, were intended for DUONG's delivery route; however, they did not
11   arrive to be delivered.  Postal Service records showed DUONG, while on-duty with the
12   Postal Service, drove to the **SUBJECT PREMISES**.  Postal Service records confirmed
13   this address is not on the delivery route DUONG was assigned to.  DUONG stayed at this
14   location for approximately 17 minutes before returning to his place of work, 13400
15   Southeast 30th Street, Bellevue, Washington 98005.

16       15.     On January 7, 2020, investigators conducted surveillance on DUONG as he
17   delivered mail.  Postal Service records indicated two Express Mail parcels were destined
18   to DUONG'S delivery route.  Both parcels were similar to the parcels described above.
19   With the assistance of covert cameras installed in the delivery vehicle operated by
20   DUONG, investigators observed DUONG bring two Express Mail parcels into his
21   delivery vehicle.  At approximately 11:08am, DUONG scanned both parcels as delivered.
22   DUONG was not in the vicinity of the destination addresses when he did so.  DUONG
23   then drove, in the Postal Service delivery vehicle, to the **SUBJECT PREMISES**.  As
24   DUONG was driving he was observed handling his cellular phone.  After arriving at the
25   **SUBJECT PREMISES**, DUONG removed both parcels from the vehicle and walked
26   towards the residence.  When he returned to the vehicle, he did not have the parcels.
27   DUONG departed the location and resumed delivering mail.

28

Affidavit of Special Agent Casey J. Snyder – 5
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

16.     Later, on January 7, 2021, investigators conducted surveillance on DUONG.  DUONG drove the **SUBJECT VEHICLE** directly from work to the **SUBJECT PREMISES**.  At the **SUBJECT PREMISES**, investigators observed a white Honda Accord (AXP6315), a white Lexus (BKG6327), and a silver Honda Accord (944YEH).  Approximately 15 minutes after arriving at the **SUBJECT PREMISES**, DUONG departed in the **SUBJECT VEHICLE** and drove to 2000 Northeast 16th Street, Renton, Washington.  Surveillance was terminated while DUONG was still at this residence.

17.     On January 12, 2021, investigators conducted surveillance on DUONG. Postal Service records indicated DUONG handled/scanned two Express Mail parcels similar to those described above.  Investigators followed DUONG from his delivery route to the **SUBJECT PREMISES**.  DUONG exited the delivery vehicle with what appeared to be two Express Mail parcels.  DUONG appeared to enter the residence with the parcels.  A few minutes later, DUONG exited the **SUBJECT PREMISES** without the parcels, entered the delivery vehicle, and departed.  A silver Honda Accord (WA 944YEH), a white Honda Accord (WA AXP6315), and a blue Toyota Prius (WA BKS7412); previously observed at the **SUBJECT PREMISES**, were parked at the **SUBJECT PREMISES** when DUONG arrived and after he departed.

18.     On January 15, 2021, Postal Service records indicated an Express Mail parcel similar to those described above was destined to DUONG's delivery route.  Using the covert cameras in DUONG's delivery vehicle, investigators observed DUONG scan the parcel, then handle his cell phone.  DUONG then removed the label from the Express Mail parcel and placed the parcel in his backpack.  After doing so, DUONG again handled his cell phone.

19.     On January 25, 2021, Postal Service records indicated two Express Mail parcels, similar to those described above, were destined to DUONG's delivery route.  One originated in Kentucky, the other in Tennessee.  Using the covert cameras in DUONG's delivery vehicle, investigators were able to observe DUONG scan the parcels

Affidavit of Special Agent Casey J. Snyder – 6
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

as delivered and remove the labels from the parcels.  DUONG drove the Postal Service delivery vehicle to the **SUBJECT PREMISES** and exited the vehicle.  On the drive to this residence, investigators observed DUONG talking on his cellular phone.  DUONG returned to the delivery vehicle and retrieved the two Express Mail parcels, then walked back to the **SUBJECT PREMISES**.  DUONG returned to the delivery vehicle without the parcels and immediately began handling his cell phone.  DUONG appeared to make a phone call before driving back towards his delivery route and resuming his duties.

20.     On February 4, 2021, investigators surveilled DUONG, with the assistance of the tracker affixed to the **SUBJECT VEHICLE**.  Investigators observed Washington license plate BWP2727 affixed to the **SUBJECT VEHICLE**.  Law enforcement records confirmed this vehicle was registered to DUONG at 16004 Lake Hills Boulevard, Bellevue, Washington.  Investigators observed DUONG leave work and place a **BACKPACK** in the rear of the **SUBJECT VEHICLE**, similar to the black backpack used previously.  That evening, investigators observed DUONG drive the **SUBJECT VEHICLE** to 2000 Northeast 16th Street, Renton, Washington.  DUONG entered and exited the residence carrying what appeared to be a large dark bag or backpack which he placed in the rear of the **SUBJECT VEHICLE**.  DUONG then drove back to the **SUBJECT PREMISES**.

21.     On February 18, 2021, investigators conducted surveillance on DUONG, with the assistance of the GPS tracker affixed to the **SUBJECT VEHICLE**.  DUONG again brought a **BACKPACK** out of the Postal Service facility and placed it in the rear of the **SUBJECT VEHICLE**.  DUONG drove to the **SUBJECT PREMISES**, retrieved the backpack from the rear of the **SUBJECT VEHICLE**, and entered the residence.

22.     On February 26, 2021, Postal Service records indicated two Express Mail parcels, similar to those described above, were destined to DUONG's delivery route.  One of these parcels originated in Atlanta, GA, the other in Clarksville, TN.  Using the covert cameras in DUONG's delivery vehicle, investigators observed DUONG enter his delivery vehicle with two Express Mail parcels which he scanned as delivered.  DUONG

Affidavit of Special Agent Casey J. Snyder – 7
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  handled his cell phone, while driving the Postal Service delivery vehicle to the

2  **SUBJECT PREMISES**.  Upon arriving at the **SUBJECT PREMISES**, DUONG took

3  the two Express Mail parcels from the delivery vehicle and walked towards the residence.

4  When DUONG returned to the delivery vehicle, he did not have the parcels.

5       23.  On March 9, 2021, Postal Service records indicated an Express Mail parcel,

6  similar to those described above, was destined to DUONG's delivery route.  Using the

7  covert cameras in DUONG's delivery vehicle, investigators observed DUONG scan the

8  parcel, then place it in his backpack, within the delivery vehicle.  DUONG then grabbed

9  his cell phone and exited the vehicle.

10       24.  On March 17, 2021, investigators conducted surveillance on DUONG with

11  the assistance of the GPS tracker affixed to the **SUBJECT VEHICLE**.  Postal Service

12  records indicated DUONG was receiving four parcels similar to those described above.

13  Investigators observed DUONG travel to the **SUBJECT PREMISES**, while on duty,

14  after collecting these parcels from the Bellevue Carrier Annex.  In the evening of March

15  17, 2021, DUONG drove the **SUBJECT VEHICLE** to 2000 Northeast 16th Street,

16  Renton, Washington.  DUONG knocked on the door and waited.  He then turned and

17  appeared to speak with someone at the door.  DUONG then went to the **SUBJECT**

18  **VEHICLE** and retrieved what appeared to be a white bag with large square objects in it,

19  which he carried into the residence.  DUONG exited the residence shortly after, without

20  the bag or its contents and departed in the **SUBJECT VEHICLE**.

21       25.  On March 25, 2021, Postal Service records indicated three Express Mail

22  parcels, similar to those described above, were destined to DUONG's delivery route.

23  Using the covert cameras in DUONG's delivery vehicle, investigators observed DUONG

24  drive his delivery vehicle to the **SUBJECT PREMISES**.  Duong appeared to carry

25  multiple Express Mail parcels towards the residence.  When DUONG returned to the

26  delivery vehicle, he no longer had the parcels.  Investigators observed DUONG use his

27  Postal Service scanner to scan something on his cellular phone, multiple times.  DUONG

28  then appeared to input information into the scanner from his cellular phone.  These scan

Affidavit of Special Agent Casey J. Snyder – 8
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  times and locations match Postal Service records for scans associated with the three

2  Express Mail parcels destined to DUONG's delivery route.  Based on my training and

3  experience, I know Postal Service shipping labels contain barcode information on them.

4  Postal Service employees use Postal Service "scanners" to scan these barcodes; in order

5  to update the status of a parcel, such as "delivered" or "Return to Sender".  In order for

6  the status of a parcel to be updated, Postal Service employees must either scan this

7  barcode or manually enter the parcel information.  For DUONG to be able to update the

8  status of a parcel by scanning his phone, the phone had to contain images or copies of the

9  barcodes and/or the shipping labels from these parcels.  Based on this, I believe DUONG

10  was scanning images of shipping labels, maintained on his cell phone.  Investigators

11  observed multiple vehicles at the **SUBJECT PREMISES**, including a white Honda

12  Accord (AXP6315) and a white Lexus IS, bearing Washington license plate BKG6327.

13  Law enforcement records showed the white Lexus IS was registered to My NGUYEN at

14  the **SUBJECT PREMISES**.

15      26.      On March 30, 2021, Postal Service records indicated two Express Mail

16  parcels, similar to those described above, were destined to DUONG's delivery route.

17  Using the covert cameras in DUONG's delivery vehicle, investigators observed DUONG

18  drive his delivery vehicle to the **SUBJECT PREMISES**.  DUONG exited the delivery

19  vehicle and walked towards the residence.  After returning to the delivery vehicle,

20  DUONG retrieved his wallet and pulled what appeared to be a credit/debit card from the

21  wallet.  DUONG appeared to enter information from the card into his cell phone.

22  DUONG then used the Postal Service scanner to scan something on his cell phone and

23  wrote something on the scanner.  Approximately 30 minutes later, DUONG again used

24  the Postal Service scanner to scan something on his cell phone.  These scan times and

25  locations match Postal Service records for scans associated with the two Express Mail

26  parcels destined to DUONG's delivery route.  Based on my training and experience, I

27  believe DUONG was scanning images of shipping labels, maintained on his cell phone.

28

Affidavit of Special Agent Casey J. Snyder – 9
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

27.     On April 16, 2021, investigators conducted surveillance on DUONG. Postal Service records indicated two Express Mail parcels, similar to those described above, were destined to DOUNG's delivery route and residence.  The first was Express Mail parcel EJ655332919US, which was mailed from Clarksville, TN to the **SUBJECT PREMISES**.  Investigators confirmed this parcel was not addressed to DUONG.  Earlier, on April 16, 2021, investigators executed a federal warrant on this parcel and found it to contain $83,990.00 in U.S. currency.  Investigators placed this mail piece back in the mail stream after examination.  The second parcel was Express Mail parcel EJ647915820US, which was mailed from Atlanta, GA, to 1660 118th Ave S, Bellevue, WA 98005.  This is a deliverable address on DUONG's delivery route.

28.     Postal Service records showed both parcels were scanned "Delivered" by DUONG.  Using the covert cameras in DUONG's delivery vehicle, investigators observed DUONG shove at least one of the Express Mail parcels into his **BACKPACK**. Later, investigators observed DUONG return to the Bellevue Carrier Annex and exit his delivery vehicle with the backpack.  After leaving work, DUONG drove the **SUBJECT VEHICLE** directly from the Bellevue Carrier Annex to 2000 NE 16th St, Renton, WA. Investigators observed DUONG enter this residence with the **BACKPACK**. Approximately 10 minutes later, investigators observed DUONG exit the residence with the same backpack and depart in the **SUBJECT VEHICLE**.

29.     On April 22, 2021, investigators conducted surveillance on multiple locations associated to this investigation, including the **SUBJECT PREMISES** and 2000 Northeast 16th Street, Renton, Washington.  Postal Service records indicated two parcels associated with this investigation were destined to DUONG's delivery route.  Postal Service records indicated DUONG drove his delivery vehicle to the **SUBJECT PREMISES** at approximately 10:13am.  Investigators observed a blue Toyota Prius (WA BKS7412), a white Honda Accord (WA AXP6315), and a white Lexus (WA BKG6327) at the **SUBJECT PREMISES**.  At approximately 3:58pm, an Asian male, believed to be Dai TRAN loaded something into the trunk of the blue Toyota Prius and departed.  At

1  approximately 4:24pm, investigators observed the blue Toyota Prius arrive at 2000

2  Northeast 16th Street, Renton, Washington.  TRAN carried a box from the vehicle and

3  waited at the front door.  After the door was answered, TRAN carried the box inside.

4  After approximately eight minutes, TRAN exited the residence, carrying the same box.

5  He entered the blue Toyota Prius and departed.  Investigators observed the blue Toyota

6  Prius arrive at the **SUBJECT PREMISES** at approximately 7:48pm.

7      30.    At approximately 5:40pm, DUONG arrived at the **SUBJECT PREMISES**

8  in the **SUBJECT VEHICLE**.  At approximately 7:50pm, investigators observed

9  DUONG exit the **SUBJECT PREMISES** and load what appeared to be a large full black

10  garbage bag and two boxes, which appeared to be Postal Service boxes, into the rear of

11  the **SUBJECT VEHICLE**.  TRAN brought DUONG a third box from within the

12  **SUBJECT PREMISES**, which DUONG placed inside the rear of the **SUBJECT**

13  **VEHICLE** before he departed.  Investigators followed DUONG to a residence located at

14  2822 South 376th Place, Federal Way, Washington.  DUONG backed up to the residence

15  and appeared to unload items from the rear of the **SUBJECT VEHICLE**.  After leaving

16  this location, DUONG made a stop in Seattle, Washington before traveling to 2000

17  Northeast 16th Street, Renton, Washington.

18      31.    On April 23, 2021, using the covert cameras installed in DUONG's

19  delivery vehicle, investigators observed DUONG rip open two Priority Mail parcels,

20  while delivering mail in Bellevue, Washington.  He placed the contents from one of the

21  parcels inside his **BACKPACK** located within his delivery vehicle.  DUONG placed the

22  contents he removed from the second parcel within the delivery vehicle; out of the

23  camera's view.  At the end of his workday, DUONG collected the **BACKPACK** from

24  the delivery vehicle and left.  Data from the GPS affixed to the **SUBJECT VEHICLE**

25  showed DUONG traveled directly from work to the **SUBJECT PREMISES**.

26  Investigators were later able to recover the two parcels DUONG ripped open from a

27  recycling bin.  Inspection of the parcels showed they were not intended for DUONG or

28  any address associated to DUONG.

Affidavit of Special Agent Casey J. Snyder – 11
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

32.     On May 19, 2021, Postal Service records indicated two parcels, similar to those described above were intended to DUONG's delivery route.  Using the covert cameras installed in DUONG's delivery vehicle, investigators observed DUONG drive to the **SUBJECT PREMISES**.  DUONG removed two Express Mail parcels from the delivery vehicle and walked towards the residence.  When he returned to the delivery vehicle, he no longer had the parcels.  DUONG departed in the delivery vehicle and returned to his delivery route.

## TACTICS USED BY DRUG TRAFFICKERS

33.     Based on my training and experience, and conversations with other experienced law enforcement agents and officers who have been involved in narcotics cases, I know the following.

34.     The distribution of illegal narcotics is frequently a continuing activity lasting over months and years.  Persons involved in the trafficking of illegal controlled substances typically will obtain and distribute controlled substances on a regular basis, much as a distributor of a legal commodity would purchase stock for sale.  Similarly, such drug traffickers will maintain an "inventory" which will fluctuate in size depending upon the demand for and the available supply of the product.  Drug traffickers often keep records of their illegal activities not only during the period of their drug trafficking violations but also for a period of time extending beyond the time during which the trafficker actually possesses/controls illegal controlled substances.  The records are kept in order to maintain contact with criminal associates for future transactions and so that the trafficker can have records of prior transactions for which the trafficker might still be owed money or might owe someone else money.  Dealers often keep these records in their homes and in vehicles that they own, use, or have access to.

35.     It is common for drug traffickers to conceal large quantities of U.S. currency, foreign currency, cryptocurrency, financial instruments, precious metals, jewelry, and other items of value that are proceeds from drug trafficking in their residences and in other storage areas associated with the residence, such as on-site

Affidavit of Special Agent Casey J. Snyder – 12
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

storage lockers, garages, detached storage sheds, and parking stalls, or safes located on the property.  Based on my training and experience, I know that cryptocurrency is increasingly being used as a means of payment among members of a drug trafficking conspiracy.

36.     Evidence of excessive wealth beyond an individual's outward means is probative evidence of the distribution of controlled substances.  Therefore, receipts showing the expenditure of large sums of money and/or the expensive assets can be evidence of drug trafficking.  Drug traffickers commonly keep the expensive assets themselves and/or documentation of the purchase of the asset (receipts, warranty cards, etc.) in their homes, places of business, and in vehicles that they own, use, or have access to.

37.     It is common for drug traffickers to maintain equipment and supplies (such as scales, packaging, and masking agents) on hand over a long period, even when they do not have any controlled substances on hand.  The aforementioned items are frequently maintained in the drug trafficker's homes, places of business, stash houses, or storage units, and in vehicles that they own, use, or have access to.

38.     Drug traffickers often have some amount of inventory—namely, illegal drugs—stored in their homes, places of business, stash houses or storage units, and in vehicles that they own, use, or have access to.

39.     It is common for drug traffickers to possess firearms and ammunition to protect their drugs, assets, and persons from hostile gangs, rival traffickers, other criminals, and from law enforcement.  Persons who purchase and possess firearms also tend to maintain the firearms and ammunition for lengthy periods of time.  Firearms can be acquired both legally and unlawfully, without official/traceable documentation.  Persons who acquire firearms from Federal Firearms Licensees, through deliberate fraud and concealment, often will also acquire firearms from private parties and other sources unknown to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").  Persons who, whether legally or illegally, purchase, possess, sell and/or transfer firearms or

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

ammunition commonly maintain the firearms or ammunition on their person, at their residence or business, or in a motor vehicle which they own and/or operate.  Firearms or ammunition are often secreted at other locations within their residential curtilage, and the identification of these firearms will assist in establishing their origin.  Persons who purchase, possess, sell and/or trade firearms or ammunition commonly maintain documents and items that are related to the purchase, ownership, possession, sale and/or transfer of firearms, ammunition, and/or firearm parts, including but not limited to driver's licenses, telephone records, telephone bills, address and telephone books, canceled checks, receipts, bank records and other financial documentation on the owner's person, at the owner's residence or business, or in vehicles that they own, use, or have access to.  Additionally, these individuals often maintain holsters, spare magazines or speed loaders and other instruments to facilitate the use of firearms in furtherance of criminal activity or acts of violence.

40.     It is common for members of drug trafficking organizations, in an attempt to disguise their identities and illegal activities, to use prepaid cellular telephones and prepaid long-distance calling cards.  Often the only way to connect a subject with a particular prepaid cellular telephone or calling card is to seize the phone or calling card from the trafficker or his residence.  The aforementioned items are frequently maintained in the drug trafficker's residence, place of business, or other areas they have access to.

41.     Drug traffickers often carry many of the items described above—including (but not limited to) drugs, drug proceeds, firearms, cellular phones—on their person.

42.     Drug dealers regularly use cell phones and other electronic communication devices to further their illegal activities.  As a result, evidence of drug dealing can often be found in text messages, address books, call logs, photographs, emails, text messaging or picture messaging applications, videos, and other data that is stored on cell phones and other electronic communication devices.  Additionally, the storage capacity of such devices allows them to be used for the electronic maintenance of ledgers, pay/owe logs, drug weights and amounts, customers contact information, not only during the period of

Affidavit of Special Agent Casey J. Snyder – 14
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

their drug trafficking violations but also for a period of time extending beyond the time during which the trafficker actually possesses/controls illegal controlled substances. The records are kept in order to maintain contact with criminal associates for future transactions and so that the trafficker can have records of prior transactions for which the trafficker might still be owed money or might owe someone else money.

43.     Drug traffickers increasingly use applications on smartphones that encrypt communications such as WhatsApp, or applications that automatically delete messages, such as Snapchat, in order to avoid law enforcement monitoring or recording of communications regarding drug trafficking and/or money laundering. Evidence of the use of such applications can be obtained from smartphones and is evidence of a smartphone user's efforts to avoid law enforcement detection.

## SEARCH AND SEIZURE OF DIGITAL MEDIA

44.     As described above and in Attachment B, this application seeks permission to search for items listed in Attachment B that might be found in **SUBJECT PREMISES**, on DUONG's person, in DUONG's backpack, and in **SUBJECT VEHICLE**, including digital devices.

45.     In order to examine digital media in a forensically sound manner, law enforcement personnel, with appropriate expertise, will conduct a forensic review of any digital media seized. The purpose of using specially trained computer forensic examiners to conduct the imaging of any digital media or digital devices is to ensure the integrity of the evidence and to follow proper, forensically sound, scientific procedures. When the investigative agent is a trained computer forensic examiner, it is not always necessary to separate these duties. Computer forensic examiners and investigators often work closely with investigative personnel to assist investigators in their search for digital evidence. Computer forensic examiners are needed because they generally have technological expertise that investigative agents do not possess. Computer forensic examiners, however, may lack the factual and investigative expertise that an investigate agent may possess. Therefore, computer forensic examiners and agents often work closely together.

Affidavit of Special Agent Casey J. Snyder – 15
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

It is intended that the warrant will provide authority for the affiant to forensically review, or seek the assistance of others in the HSI or within other law enforcement agencies to assist in the forensic review of any digital devices.

46.     I also know the following:

a.     Based my knowledge, training, and experience, I know that computer files or remnants of such files may be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, this information can sometimes be recovered months or years later with forensics tools.  This is because when a person "deletes" a file on a computer, the data contained in the files does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.     Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten.  In addition, a computer's operating system may also keep a record of deleted data in "swap" or "recovery" files.

c.     Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it.  To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" paging files.  Computer users typically do not erase or delete this evidence, because special software is typically required for that task.  However, it is technically possible to delete this information.

d.     Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

Affidavit of Special Agent Casey J. Snyder – 16
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

e.      Digital storage devices may also be large in capacity, but small in physical size.  Those who are in possession of such devices also tend to keep them on their persons, especially when they may contain evidence of a crime.  Digital storage devices may be smaller than a postal stamp in size, and thus they may easily be hidden in a person's pocket.

f.      As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when.  There is probable cause to believe that this forensic electronic evidence will be on digital devices found in the **SUBJECT PREMISES**, on DUONG's person, in DUONG's backpack, or in **SUBJECT VEHICLE**, because:

g.      Data on the digital storage medium or digital devices can provide evidence of a file that was once on the digital storage medium or digital devices but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).  Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use.  Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

h.      As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to further establish and prove each element or alternatively, to exclude the innocent

Affidavit of Special Agent Casey J. Snyder – 17
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   from further suspicion.  In my training and experience, information stored within a

2   computer or storage media (*e.g.*, registry information, communications, images and

3   movies, transactional information, records of session times and durations, Internet

4   history, and anti-virus, spyware, and malware detection programs) can indicate who has

5   used or controlled the computer or storage media.  This "user attribution" evidence is

6   analogous to the search of "indicia of occupancy" while executing a search warrant at a

7   residence.  The existence or absence of anti-virus, spyware, and malware detection

8   programs may indicate whether the computer was remotely accessed, thus inculpating or

9   exculpating the computer owner.  Further computer and storage media activity can

10  indicate how and when the computer or storage media was accessed or used.  For

11  example, as described herein, computers typically contain information that log computer

12  activity associated with user accounts and electronic storage media connected with the

13  computer.  Such information allows investigators to understand the chronological context

14  of computer or electronic storage media access, use, and events relating to the crime

15  under investigation.  Additionally, some information stored within a computer or

16  electronic storage media may provide crucial evidence relating to the physical location of

17  other evidence and the suspect.  For example, images stored on a computer may both

18  show a particular location and have geolocation information incorporated into its file

19  data.  Such file data typically also contains information indicating when the file or image

20  was created.  The existence of such image files, along with external device connection

21  logs, may also indicate the presence of additional electronic storage media (*e.g.*, a digital

22  camera or cellular phone with an incorporated camera).  The geographic and timeline

23  information described herein may either inculpate or exculpate the computer user.

24  Lastly, information stored within a computer may provide relevant insight into the

25  computer user's state of mind as it relates to the offense under investigation.  For

26  example, information within the computer may indicate the owner's motive and intent to

27  commit the crime (e.g., Internet searches indicating criminal planning), or consciousness

28  of guilt (e.g., running a "wiping" program to destroy evidence on the computer or

Affidavit of Special Agent Casey J. Snyder – 18
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  password protecting/encrypting such evidence in an effort to conceal it from law
2  enforcement).

3        i.     A person with appropriate familiarity with how a computer works
4  can, after examining this forensic evidence in its proper content, draw conclusions about
5  how computers were used, the purpose of their use, who used them, and when.

6        j.     The process of identifying the exact files, blocks, registry entries,
7  logs, or other forms of forensic evidence on a storage medium that are necessary to draw
8  an accurate conclusion is a dynamic process.  While it is possible to specify in advance
9  the records to be sought, computer evidence is not always data that can be merely
10  reviewed by a review team and passed along to investigators.  Whether data stored on a
11  computer is evidence may depend on other information stored on the computer and the
12  application of knowledge about how a computer behaves.  Therefore, contextual
13  information necessary to understand other evidence also falls within the scope of the
14  warrant.

15        k.     Further, in finding evidence of how a computer was used, the
16  purpose of its use, who used it, and when, sometimes it is necessary to establish that a
17  particular thing is not present on a storage medium.  For example, the presence or
18  absence of counter-forensic programs or anti-virus programs (and associated data) may
19  be relevant to establishing a user's intent.

20        l.     In most cases, a thorough search of a premises for information that
21  might be stored on digital storage media or other digital devices often requires the seizure
22  of the digital devices and digital storage media for later off-site review consistent with the
23  warrant.  In lieu of removing storage media from the premises, it is sometimes possible to
24  make an image copy of storage media.  Generally speaking, imaging is the taking of a
25  complete electronic copy of the digital media's data, including all hidden sectors and
26  deleted files.  Either seizure or imaging is often necessary to ensure the accuracy and
27  completeness of data recorded on the storage media, and to prevent the loss of the data
28  either from accidental or intentional destruction.  This is true because of the following:

Affidavit of Special Agent Casey J. Snyder – 19
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

m.   *The time required for an examination.*   As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable.   As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence.   Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

n.   *Technical requirements.*   Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.   Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site.   The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on-site.   However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

o.   *Variety of forms of electronic media.*   Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

47.   Searching computer systems is a highly technical process that requires specific expertise and specialized equipment.   There are so many types of computer hardware and software in use today that it is rarely possible to bring to the search site all the necessary technical manuals and specialized equipment necessary to consult with computer personnel who have expertise in the type of computer, operating system, or software application being searched.

Affidavit of Special Agent Casey J. Snyder – 20
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

48.     The analysis of computer systems and storage media often relies on rigorous procedures designed to maintain the integrity of the evidence and to recover "hidden," mislabeled, deceptively named, erased, compressed, encrypted or password-protected data, while reducing the likelihood of inadvertent or intentional loss or modification of data.  A controlled environment such as a laboratory, is typically required to conduct such an analysis properly.

49.     The volume of data stored on many computer systems and storage devices will typically be so large that it will be highly impracticable to search for data during the execution of the physical search of the premises.  The hard drives commonly included in desktop and laptop computers are capable of storing millions of pages of text.

50.     A search of digital devices for evidence described in Attachment B may require a range of data analysis techniques.  In some cases, agents may recover evidence with carefully targeted searches to locate evidence without requirement of a manual search through unrelated materials that may be commingled with criminal evidence. Agents may be able to execute a "keyword" search that searches through the files stored in a digital device for special terms that appear only in the materials covered by the warrant.  Or, agents may be able to locate the materials covered by looking for a particular directory or name.  However, in other cases, such techniques may not yield the evidence described in the warrant.  Individuals may mislabel or hide files and directories; encode communications to avoid using keywords; attempt to delete files to evade detection; or take other steps designed to hide information from law enforcement searches for information.

51.     The search procedure of any digital device seized may include the following on-site techniques to seize the evidence authorized in Attachment B:

a.     On-site triage of computer systems to determine what, if any, peripheral devices or digital storage units have been connected to such computer systems, a preliminary scan of images files contained on such systems and digital storage devices to help identify any other relevant evidence or co-conspirators.

Affidavit of Special Agent Casey J. Snyder – 21
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        b.     On-site copying and analysis of volatile memory, which is usually

2 lost if a computer is powered down and may contain information about how the computer

3 is being used, by whom, when and may contain information about encryption, virtual

4 machines, or stenography which will be lost if the computer is powered down.

5        c.     On-site forensic imaging of any computers may be necessary for

6 computers or devices that may be partially or fully encrypted in order to preserve

7 unencrypted data that may, if not immediately imaged on-scene become encrypted and

8 accordingly become unavailable for any examination.

9                                      **CONCLUSION**

10    52.    Based on the information set forth herein, there is probable cause to search

11 the above-described **SUBJECT PREMISES**, the person of TRI HIEN DUONG, the

12 backpack used by TRI HIEN DUONG, and the **SUBJECT VEHICLE**, as further

13 described in Attachments A-1 through A-4, for evidence, fruits, and instrumentalities, as

14 further described in Attachment B, of crimes committed by the individual listed in this

15 affidavit and their coconspirators, specifically distribution of, and possession of, with

16 intent to distribute, controlled substances, in violation of Title 21, United States Code,

17 Section 841(a)(1).

18

19

20                                CASEY J. SNYDER

21                                Special Agent

22                                USPS OIG

23    The above-named agent provided a sworn statement to the truth of the foregoing

24 affidavit by telephone on the 26th day of May, 2021.

25

26

27                                BRIAN A. TSUCHIDA

28                                United States Magistrate Judge

Affidavit of Special Agent Casey J. Snyder – 22
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A-1**

**Place to Be Searched (SUBJECT PREMISES)**

The place to be searched is 15103 SE Newport Way, Bellevue, WA 98006, a one-story structure located on the south side of SE Newport Way.  The house is blue in color with red and white trim.  The entry door is located approximately at the middle of the house and is white in color.  The numbers "15103" are located to the left of the front door to the residence.

The search is to include all storage areas associated with the premises, such as on-site storage lockers, detached storage sheds, and parking stalls, or safes; and any digital device(s) or other electronic storage media.



Attachment A-1
USAO #2021R00039 - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## **ATTACHMENT A-2**

2

### **Person to Be Searched**

3        This warrant authorizes the search of the person of TRI HIEN DUONG, DOB

4    11/22/1987 and the **SUBJECT PREMISES**.

5

6

7

8

9

10



11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attachment A-2
USAO #2021R00039 - 1

**ATTACHMENT A-3**

**Property to Be Searched (Backpack)**

This warrant authorizes the search of a **BACKPACK** regularly used by TRI DUONG, and the **SUBJECT PREMISES**.





Attachment A-3
USAO #2021R00039 - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# ATTACHMENT A-4

## Vehicle to Be Searched (SUBJECT VEHICLE)

This warrant authorizes the search of a red, 2021, Acura RDX, bearing Washington license plate BWP2727; and VIN: 5J8TC2H57ML014595 and the **SUBJECT PREMISES**.





Attachment A-4
USAO #202R00039 - 1

# **ATTACHMENT B**

## **List of Items to Be Seized**

Evidence, fruits, and instrumentalities of violations of 21 U.S.C. § 841(a)(1) (Distribution of and Possession with Intent to Distribute Controlled Substances), involving TRI DUONG, as follows:

1.    Controlled Substances:  Including but not limited to methamphetamine, fentanyl, cocaine, crack cocaine, heroin, hashish, marijuana, MDMA, methadone, oxycodone, Oxycontin, Suboxone, Clonazepam, Alprazolam, Xanax, and Adderall;

2.    Drug Paraphernalia:  Items used, or to be used, to store, process, package, use, and/or distribute controlled substances, such as plastic bags, DVD cases, cutting agents, scales, measuring equipment, vials, pill presses, Mylar bags, heat/vacuum sealers, tape, duffel bags, chemicals or items used to test the purity and/or quality of controlled substances, and similar items;

3.    Drug Transaction Records:  Documents such as ledgers, receipts, notes, and similar items relating to the acquisition, transportation, and distribution of controlled substances;

4.    Customer and Supplier Information:  Items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe" sheets with drug amounts and prices, maps or directions, and similar items;

5.    Cash and Financial Records:  Currency and financial records, including bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, vehicle documents, and similar items; and other records that show income and expenditures, net worth, money transfers, wire transmittals, negotiable instruments, bank drafts, cashier's checks, and similar items, and money counters;

6.    Photographs/Surveillance:  Photographs, video tapes, digital cameras, surveillance cameras and associated hardware/storage devices, and similar items, depicting property occupants, friends and relatives of the property occupants, or suspected buyers or sellers of controlled substances, controlled substances or other contraband, weapons, and assets derived from the distribution of controlled substances;

7.    Weapons:  Including but not limited to firearms, magazines, ammunition, and body armor;

Attachment B - 1
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

8.      Codes:  Evidence of codes used in the distribution of controlled substances, including passwords, code books, cypher or decryption keys, usernames and/or credentials for dark web marketplaces, and similar information;

9.      Property Records:  Deeds, contracts, escrow documents, mortgage documents, rental documents, and other evidence relating to the purchase, ownership, rental, income, expenses, or control of the premises, and similar records of other property owned or rented;

10.      Indicia of occupancy, residency, and/or ownership of assets including, utility and telephone bills, canceled envelopes, rental records or payment receipts, leases, mortgage statements, and other documents;

11.      Evidence of Storage Unit Rental or Access:  Rental and payment records, keys and codes, pamphlets, contracts, contact information, directions, passwords or other documents relating to storage units;

12.      Evidence of Personal Property Ownership:  Registration information, ownership documents, or other evidence of ownership of property including, but not limited to vehicles, vessels, boats, airplanes, jet skis, all-terrain vehicles, RVs, and personal property; evidence of international or domestic travel, hotel/motel stays, and any other evidence of unexplained wealth;

13.      Individual and business financial books, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, such as:

      a.      Employment records:  paychecks or stubs, lists and accounts of employee payrolls, records of employment tax withholdings and contributions, dividends, stock certificates, and compensation to officers.

      b.      Savings accounts:  statements, ledger cards, deposit tickets, register records, wire transfer records, correspondence, and withdrawal slips.

      c.      Checking accounts:  statements, canceled checks, deposit tickets, credit/debit documents, wire transfer documents, correspondence, and register records.

      d.      Loan Accounts:  financial statements and loan applications for all loans applied for, notes, loan repayment records, and mortgage loan records.

      e.      Collection accounts:  statements and other records.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

f. Certificates of deposit:  applications, purchase documents, and statements of accounts.

g. Credit card accounts:  credit cards, monthly statements, and receipts of use.

h. Receipts and records related to gambling wins and losses, or any other contest winnings.

i. Insurance:  policies, statements, bills, and claim-related documents.

j. Financial records:  profit and loss statements, financial statements, receipts, balance sheets, accounting work papers, any receipts showing purchases made, both business and personal, receipts showing charitable contributions, and income and expense ledgers.

14. All bearer bonds, letters of credit, money drafts, money orders, cashier's checks, travelers checks, Treasury checks, bank checks, passbooks, bank drafts, money wrappers, stored value cards, and other forms of financial remuneration evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or expenditures of money;

15. All Western Union and/or Money Gram documents and other documents evidencing domestic or international wire transfers, money orders, official checks, cashier's checks, or other negotiable interests that can be purchased with cash, to include applications, payment records, money orders, frequent customer cards, etc;

16. Negotiable instruments, jewelry, precious metals, financial instruments, and other negotiable instruments;

17. Documents reflecting the source, receipt, transfer, control, ownership, and disposition of United States and/or foreign currency;

18. Correspondence, papers, records, and any other items showing employment or lack of employment;

19. Telephone books, and/or address books, facsimile machines, any papers reflecting names, addresses, telephone numbers, pager numbers, cellular telephone numbers, facsimile, and/or telex numbers, telephone records and bills relating to co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists.  Also, telephone answering devices that record telephone conversations and the tapes therein for messages left for or by co-

Attachment B - 3
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

conspirators for the delivery or purchase of controlled substances or laundering of drug proceeds;

20.     Safes and locked storage containers, and the contents thereof which are otherwise described in this document;

21.     Tools:  Tools that may be used to open hidden compartments in vehicles, paint, bonding agents, magnets, or other items that may be used to open/close said compartments;

22.     Any and all mailing documents and packaging materials related to U.S. Postal Service, UPS, and FedEx, including but not limited to USPS Express Mail labels, express mail and priority envelopes, first class mailings, receipts for USPS packages, and tracking information;

23.     Any records or information pertaining to the dark web and dark web marketplaces, including the Empire Market, Deep Sea Market, and White House Market;

24.     Any records or information pertaining to darknet monikers;

25.     Cryptocurrency applications and wallets, including information regarding current account balance and transaction history, i.e., date, time, amount, an address of the sender/recipient of a cryptocurrency transaction maintained in such wallets;

26.     Any records or information reflecting cryptocurrencies, including web history, and documents showing the location, source, and timing of acquisition of any cryptocurrencies, including wallets, wallet addresses, and seed phrases;

27.     Any and all cryptocurrency, to include the following: (a) any and all representations of cryptocurrency public keys or addresses, whether in electronic or physical format; (b) any and all representations of cryptocurrency private keys, whether in electronic or physical format; and (c) any and all representations of cryptocurrency wallets or their constitutive parts, whether in electronic or physical format, to include "recovery seeds" and "root keys" which may be used to regenerate a wallet.

a.     The United States is authorized to seize any and all cryptocurrency by transferring the full account balance in each wallet to a public cryptocurrency address controlled by the United States.

b.     The United States is also authorized to use the above-described recovery seeds and root keys to reconstitute and/or regenerate any associated

Attachment B - 4
USAO #2021R00039

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

cryptocurrency wallet and to seize any and all cryptocurrency stored in, or accessible via, such wallet by transferring the full account balance to a public cryptocurrency address controlled by the United States;

28.    Cell Phones: Cellular telephones and other communications devices may be seized, and searched for the following items:

a.    Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

b.    Stored list of recent received, sent, and missed calls;

c.    Stored contact information;

d.    Stored photographs of narcotics, currency, firearms or other weapons, evidence of suspected criminal activity, and/or the user of the phone and/or co-conspirators, including any embedded GPS data associated with these photographs;

e.    Stored text messages, as well as any messages in any internet messaging apps, including but not limited to Facebook Messenger, iMessage, Wickr, Telegram, Signal, WhatsApp, Kik, and similar messaging applications, related to the aforementioned crimes of investigation or that may show the user of the phone and/or co-conspirators, including Apple iMessages, Blackberry Messenger messages or other similar messaging services where the data is stored on the telephone;

f.    Any Tor applications and records for Tor activity, including browser history and "bookmarked" or "favorite" web pages;

g.    Digital currency applications and wallets, to include information regarding current account balance and transaction history, i.e., date, time, amount, an address of the sender/recipient of a digital currency transaction maintained in such wallets;

h.    Stored documents, notes, and files that contain passwords/or encryption keys;

i.    PGP applications, to include stored private and/or public keys;

j.    Any records or information related to darknet monikers; and

29.    Digital devices, such as computers, and other electronic storage media, such as USBs and Trezor devices, may be seized, and searched for the following items:

a. Evidence of who used, owned, or controlled the digital device or other electronic storage media at the time the things described in this warrant were created, edited, deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chats," instant messaging logs, photographs, and correspondence;

b. Evidence of software that would allow others to control the digital device or other electronic storage media, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c. Evidence of the lack of such malicious software;

d. Evidence of the attachment to the digital device of other storage devices or similar containers for electronic evidence;

e. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the digital device or other electronic storage media;

f. Evidence of the times the digital device or other electronic storage media was used;

g. Passwords, encryption keys, and other access devices that may be necessary to access the digital device or other electronic storage media;

h. Contextual information necessary to understand the evidence described in this attachment;

i. Records or information pertaining to the dark web and dark web marketplaces, including the Empire Market.

j. Any records or information pertaining to darknet monikers;

k. Any records or information pertaining to Tor;

l. Any records or information pertaining to mnemonic phrases;

m. Any records or information reflecting cryptocurrencies, including web history, and documents showing the location, source, and timing of acquisition of any cryptocurrencies, to include wallets, wallet addresses, and seed phrases; and

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1           n.     Any records or information pertaining to PGP applications, to
2    include private and/or public keys.

3    THE SEIZURE OF DIGITAL DEVICES IS AUTHORIZED FOR THE PURPOSE OF
4    CONDUCTING OFF-SITE EXAMINATION OF THEIR CONTENTS FOR
     EVIDENCE, INSTRUMENTALITIES, OR FRUITS OF THE AFOREMENTIONED
5    CRIMES.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attachment B - 7
USAO #2021R00039